IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE: Felicia Raye McClain          CASE NO. 4:24-BK-12613
                                                                CHAPTER 7

**MOTION FOR RELIEF FROM STAY**

    Union Bank & Trust Company ("UB&T"), by its counsel, Barton & Roper, PLLC, and for its Motion for Relief from Stay states:

    1.   That on or about November 12, 2021, the Debtor did make, execute and deliver a Promissory Note evidencing her indebtedness to UB&T in the original sum of $66,861.84, together with interest thereon at the initial rate of 4.33% per annum. A true and correct copy of said Promissory Note is attached as Exhibit "1" to UB&T's Motion for Relief from Stay.

    2.   That to secure the repayment of the indebtedness described above, the Debtor did make, execute and deliver a Mortgage to UB&T dated November 21, 2021, filed for record December 1, 2021, and recorded as Instrument No. 104710, in the Drew County real estate records. A true and correct copy of said Mortgage is attached as Exhibit "2" to UB&T's Motion for Relief from Stay.

    3.   That the real property upon which UB&T holds a first mortgage lien situated in Drew County, Arkansas, and is more particularly described as follows, to-wit:

> Lots 1 and 2 of Block "D" of Laude's Subdivision of the City of Monticello, according to the Plat of said subdivision prepared by Y. R. Royal, surveyor, now

recorded at Page 391, of Book 28, of the deed records of Drew County, Arkansas; and

Beginning at the Southwest corner of Lot 1 of Block "D" of said Laude's Subdivision, thence West 10 feet, thence North 139.6 feet, thence East 10 feet, thence North 139.6 feet to the Point of Beginning, this property being a portion of the platted alley way which was closed by Resolution of the City Council of Monticello, Arkansas, on June 21, 1979.

4. That the Debtor has defaulted in her repayment obligations to UB&T. Debtor has not made a payment since January 2, 2024.

5. That there remains due and owing to UB&T the sum of $68,994.72, together with interest from, in the sum of $12.98 per day from August 15, 2024, together with UB&T's accruing legal fees and costs.

6. The debtor, in Schedule A / B of her bankruptcy petition filed herein, asserts that the real property in question has a currently fair market value of $71,050.00. Given the amount of the secured indebtedness to UB&T, there is no equity in the property for either the debtor or the bankruptcy estate.

WHEREFORE, UB&T prays for relief of the Automatic Stay Provisions of the US Bankruptcy Code so that it may exercise its State Law remedies as to the above-described collateral; and for all lawful and further relief, it will forever pray.

[signature page follows]

_____
Whit Barton (79010)
Barton & Roper, PLLC
(870) 367-6288
PO Box 507
Monticello, AR 71657
wbarton@bartonandroper.com
Attorneys for Creditor UB&T

**CERTIFICATE OF SERVICE**

    I, Whit Barton, do hereby certify that a true copy of the above has been furnished to all parties to this action, including Debtor Felicia Raye McClain via her attorney Matthew Dean Black and Trustee M. Randy Rice, via CM/ECF.

                                                                                  _____
                                                                                  Whit Barton (79010)

## Consumer Note

**Lender**
Union Bank & Trust Company
102 W McCloy St
Monticello, AR 71655

**Borrower**
FELICIA MCCLAIN
171 ROSE HILL CUTOFF RD
MONTICELLO, AR 71655

**Summary**
Loan Number:
Note Date: November 12, 2021
Loan Amount: $66,861.84
Maturity Date: November 15, 2022

### Definitions

*"I"*, *"me"* or *"my"* means each Borrower or Cosigner who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as *"us"*). *"You"* or *"your"* means the Lender and its successors and assigns.

*"Property"* means all property securing this note.

*"Loan Documents"* means all the documents executed as a part of or in connection with the transaction.

### Existing Loan

**Refinancing.** ☐ This note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
|  |  |  |

The remaining balance of the refinanced note(s) listed above is $_____.

**Renewal.** ☐ This note is a renewal of the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
|  |  |  |

The remaining balance of the renewed note(s) listed above is $_____.

### Promise to Pay

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of Sixty six thousand eight hundred sixty-one and 84/100 dollars ($66,861.84), or so much of this amount as may be advanced from time to time under the terms of this Note.

☐ **Single Advance.** I will receive all of the loan amount on _____. There will be no additional advances under this note. However, you may add other amounts to the principal if you make any payments described in the *Payments by Lender* section below.

☒ **Multiple Advance.** The loan amount shown above is the maximum amount I can borrow under this note. All advances will be made subject to the terms and conditions of this Note.

☐ On _____. I will receive $_____ and future principal advances are permitted.

You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions and any separate agreement).

The conditions for future advances are _____.

**Purchase Money Loan.** ☒ You may include the name of the seller on the check or draft for this note.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914Y
08/2020
Page 1 of 8

## Interest and Other Charges

I agree to pay interest on the outstanding principal balance from November 12, 2021 at the rate of 4.330% per year until paid in full, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

Interest accrues on the principal remaining unpaid from time to time, until paid in full. If you give my loan money in more than one advance, each advance will start to earn interest only when I receive it. The interest rate(s) and other charges on this note will never exceed the highest rate or charge allowed by law for this note. If you collect more interest than the law and this note allow, you agree to refund it to me. If you send any erroneous notice of interest, you agree to correct it.

**Variable Rate.** ☐ This rate may change as stated below. I will pay interest at the rates in effect from time to time.

**Change Dates.** Each date on which the interest rate may change is called a *"Change Date"*. The interest rate may change _____ and every _____ thereafter.

**The Index.** Beginning with the first Change Date, the interest rate will be based on an Index that is calculated and provided to the general public by an administrator (the *"Administrator"*). The *"Index"* is a benchmark, known as _____ index. The most recent Index value available as of the date _____ before each Change Date is called the *"Current Index,"* provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating the interest rate.

The index you select will function only as a tool for setting the rate on this note. You do not guarantee, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers.

If the Index is no longer available, it will be replaced in accordance with the *Replacement Index and Replacement Margin* section below.

**Calculation of Change.** Before each Change Date, you will calculate the new interest rate, by adding _____ percentage points (_____) (the *"Margin"*) to the Current Index. The Margin may change if the Index is replaced by the Lender in accordance with the *Replacement Index and Replacement Margin* section below. The result of the Margin plus the Current Index will be limited as provided in the *Limitations* section. The new interest rate will become effective on the Change Date and will remain in effect until the next Change Date. If there are no further Change Dates, then the new interest rate will remain in effect until changed according to the *Post-Maturity Rate* section. If there is no change under that section, then the new interest rate will remain in effect until the note is paid in full.

**Replacement Index and Replacement Margin.** The Index is deemed to be no longer available and will be replaced if any of the following events (each, a *"Replacement Event"*) occur: (i) the Administrator has permanently or indefinitely stopped providing the Index to the general public; or (ii) the Administrator or its regulator issues an official public statement that the Index is no longer reliable or representative.

If a Replacement Event occurs, you will select a new index (the *"Replacement Index"*) and may also select a new margin (the *"Replacement Margin"*), as follows:

1. If a replacement index has been selected or recommended for use in consumer products, including residential adjustable-rate mortgages, by the Board of Governors of the Federal Reserve System, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Board of Governors of the Federal Reserve System or the Federal Reserve Bank of New York at the time of a Replacement Event, you will select that index as the Replacement Index.
2. If (1) is not available at the time of a Replacement Event, you will make a reasonable, good faith effort to select a Replacement Index and a Replacement Margin that, when added together, you reasonably expect will minimize any change in the cost of the loan, taking into account the historical performance of the Index and the Replacement Index.

The Replacement Index and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine the interest rate and payments on Change Dates that are more than 45 days after a Replacement Event. The Index and Margin could be replaced more than once during the term of my Note, but only if another Replacement Event occurs. After a Replacement Event, all references to the "Index" and "Margin" shall be deemed to be references to the "Replacement Index" and "Replacement Margin."

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914Y

08/2020
Page 2 of 8

You will also give me notice of my Replacement Index and Replacement Margin, if any, and such other information required by applicable law and regulation.

**Limitations.** The following limitations (if any) apply.

☐ The interest rate cannot change more than _____ each year.

☐ The interest rate cannot increase more than _____ each year.

☐ The interest rate cannot decrease more than _____ each year.

☐ The annual interest rate cannot be greater than _____.

☐ The annual interest rate cannot be less than _____.

**Effect of Increase or Decrease in Interest Rate.** A change in the Interest Rate will have the following effect on the payments:

The _____ will change.

**Accrual Method.** The amount of interest that I will pay on this note will be calculated on a/an Actual/365 basis. For interest calculation, the accrual method will determine the number of days in a year.

**Post-Maturity Rate.** I agree to pay interest on the unpaid balance of this note owing after maturity on the same basis as before maturity, unless I agree to a specific post-maturity rate as stated below:

☐ Interest will accrue at the rate of _____ per year on the balance of this note after the maturity date. Maturity date includes the date you demand payment of the note, either after a default or because the note is payable on demand.

**Late Charge.** ☒ If I make a payment more than 10 days after it is due, I agree to pay a late charge of 10 percent of the the Unpaid Portion of the Scheduled Payment or $25.00, whichever is greater. However, this charge will not be greater than $100.00.

**Additional Charges.** ☒ The Loan Estimate and Closing Disclosure that were given to me list the fees and charges that apply to this loan.

☐ In addition to interest, I agree to pay the following charges which are included in the principal amount above:

☐ In addition to interest, I agree to pay the following charges which are not included in the principal amount above:

**Returned Payment Fee.** ☐ I agree to pay a service charge of $_____ for each payment (check, draft or automatic payment) returned unpaid.

## Assumption

This note and any document securing it cannot be assumed by someone buying the secured Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property securing this note, I will be in default on this note. You may proceed against me under any due on sale clause in the security agreement, which is incorporated by reference.

## Payments

I agree to pay this note as follows:

☐ **Demand.** I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Single Payment.** I agree to pay all principal and accrued interest on this note on or before _____

☒ **Interest Payments.** I agree to pay accrued interest on this note in monthly payments on December 15, 2021 and the same day of each month until November 15, 2022. On that date, I agree to pay in full the principal balance and all accrued interest on this note.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914Y
08/2020
Page 3 of 8

☐ **Principal and Interest Payments.** I agree to pay this note in _____
_____ payments. A payment of $_____ will be due
on _____ and on the same day of each _____ until
_____. On that date, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☐ **Two Phase Loan.** I agree to pay accrued interest on this note in _____
payments on _____ and the same day of each _____
until _____. I agree to then make _____ payments of
principal and interest on that date and on the same date of each _____ thereafter until
_____. Those payments will be in an amount sufficient to pay in full the note balance
outstanding on _____. On _____, I agree to pay in full the principal balance and all accrued interest on this note. See the *Effect of Increase or Decrease in Interest Rate* section regarding possible changes in the payment schedule if the interest rate changes.

☒ **Separate Balloon Disclosure.** ☐ A final balloon payment of $_____, together with accrued interest, if any, will be due _____. The actual amount of my final payment will depend on my payment record, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☒ A final balloon payment of up to $66,984.78, together with accrued interest, if any, will be due November 15, 2022. The final amount of my balloon payment will depend on my payment record and the amount advanced, subject to any rate changes provided in the *Variable Rate* section or *Post-Maturity Rate* section.

☐ **Demand Feature.** In addition I agree to pay this note on demand. Upon your demand the entire unpaid balance of principal and accrued interest, along with any earned, and unpaid fee or charges, and the amount of any advances made on my behalf, will be due and owing whether or not I am in default under this note.

☐ **Skip Payments.** Notwithstanding anything to the contrary contained in this note, no payments of
_____ will be due and payable in _____ of any year during the term of this note.

☐ **Negative Amortization.** If the amount of a scheduled payment does not equal or exceed interest accrued during the payment period the unpaid portion will be added to, and will be payable with, the next scheduled payment.

**Rounding and Other Information.** Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**Application of Payments.** Except as otherwise provided in this note, each payment I make on this note will be applied first to interest that is due, then to principal that is due, and finally to late charges that are due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. In addition to the change in payments or payment amounts called for in the *Effect of Increase or Decrease in Interest Rate* section in the event of a change in a variable interest rate, the actual amount of my final payment will also depend on my payment record.

**Prepayment.** I may prepay this note in whole, or in part, at any time, without penalty. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

## Default and Remedies

**Default.** Subject to any limitations in the *Real Estate or Residence Security* section, I will be in default if any of the following occur:
1. Payments. I fail to make a payment as required by this note.
2. ☒ Property. My action or inaction adversely affects the Property or your rights in the Property.
3. ☒ Fraud. I engage in fraud or material misrepresentation in connection with this transaction.
4. ☒ Other Documents. A default occurs under the terms of any other Loan Document.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914Y

08/2020
Page 4 of 8

**Remedies.** If I am in default on this note, and after you give any legally required notice and opportunity to cure the default, you have, but are not limited to, the following remedies:
1. You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges);
2. You may set off this debt against any right I have to the payment of money from you, subject to the terms of the *Set-Off* section herein;
3. You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy;
4. You may refuse to make advances to me;
5. You may use any remedy you have under state or federal law; and
6. You may require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the secured debt; and, unless prohibited by law and following any required notice of deficiency, hold me liable for any deficiency if what you receive from the sale does not satisfy the secured debts.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**Real Estate or Residence Security.** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the *Default* and *Remedies* sections of this note.

**Payments by Lender.** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**Collection Costs and Attorneys' Fees.** To the extent permitted by law, I agree to pay all costs of collection, replevin (an action for the recovery of property wrongfully taken or detained) or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any reasonable fee you incur with such attorney (as determined under *Ark. Code Ann.* §16-22-308), plus court costs (except where prohibited by law). To the extent permitted by the *United States Bankruptcy Code*, I also agree to pay the reasonable attorneys' fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**Set-Off.** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

*"Right to receive money from you"* means:
1. Any deposit account balance I have with you;
2. Any money owed to me on an item presented to you or in your possession for collection or exchange; and
3. Any repurchase agreement or other nondeposit obligation.

*"Any amount due and payable under this note"* means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any individual retirement account or other tax-deferred retirement account.

You will not be liable for the dishonor (nonpayment) of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914Y

08/2020
Page 5 of 8

## Security

☒ This note is separately secured by:

1ST MTG R/E W/HOUSE LOCATED @ 318 GODBOLD MONTICELLO, AR 71655

**Other Security.** ☐ Any present or future agreement securing any other debt I owe you also will secure the payment of this note.

**Other Debts and Property.** Property securing another debt will not secure this note if such property is my principal dwelling and you fail to provide any required notice of right of rescission (i.e., right to cancel). Also, property securing another debt will not secure this note to the extent such property is household goods. No present or future agreement securing any other debt I owe you will secure the payment of this note if, with respect to this note, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this note would become subject to Section 670 of the *John Warner National Defense Authorization Act* for Fiscal Year 2007.

### Creditor-Placed Insurance Notice

☒ *I am giving you a security interest in the Property securing this note. I am required to maintain insurance on the Property to protect your interest until all debts secured by that Property are paid. If I fail to provide evidence of insurance on the Property to you, you may place insurance on the Property and I will be responsible to pay for the costs of that creditor-placed insurance.*

## Insurance

**Required Credit Insurance.** ☐ The insurance listed below is required to obtain credit. I have the option of furnishing the required amount of insurance through existing insurance policies owned or controlled by me, or by obtaining the required coverage through any insurer reasonably acceptable to you. If I obtain the required credit insurance from you I will pay the following premium:

**Optional Credit Insurance.** ☐ Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such coverage, you will obtain it for me (if I qualify for coverage). You are quoting below ONLY the coverages that you offered me on this note.

**Property Insurance.** ☒ I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay _____ for _____ of coverage.

**Single Interest Insurance.** ☐ I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

**Private Mortgage Insurance.** ☐ I may obtain private mortgage insurance as described in other documents I sign for the loan. You will not provide the insurance unless I separately sign and agree to pay the additional cost.

**Flood Insurance.**

☐ I will insure the real property securing the loan against hazards caused by flooding as described by other documents I sign for the loan. If I get the insurance from or through you I will pay $_____ for _____ of coverage.

☒ Flood insurance is not required at this time. It may be required in the future should the Property be included in a updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**Commissions.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914Y
08/2020
Page 6 of 8

## General Terms

This note is governed by the law of the state of Arkansas, the United States of America, and to the extent required, by the law of the jurisdiction where the Property is located. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this note cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this note. No modification of this note may be made without your express written consent. Time is of the essence in this note.

**If Other Persons Owe on the Loan.** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may, without notice, release any party to this note without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.)

**Extending the Note; Assigning my Obligation.** I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this note without your prior written approval.

**Giving up my Rights.** To the extent not prohibited by law, and except for any required notice or right to cure, I give up my rights to require you to:
1. Demand payment of amounts due (presentment);
2. Obtain official certification of nonpayment (protest);
3. Give notice that amounts due have not been paid (notice of dishonor).

I give up any rights that a guarantor would have to avoid paying the note (unless it has been fully paid). I also give up any rights to avoid paying based on any action you have taken regarding any mortgage or other collateral for the note. I give up any rights under this note only if the law allows me to.

**Financial Information.** I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**Purpose.** The purpose of this note is TO PURCHASE HOUSE PLUS CASH OUT FOR IMPROVEMENTS.

## Notice

Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is indicated in this note. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated in this note, or to any other address that you have designated.

## Additional Terms

☐ _____

## FTC Notice

☐ **NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## Signatures

I understand that terms following a ☐ apply only if checked. **By signing, I agree to the terms contained in this note.** I also acknowledge receipt of a copy of this note on today's date.

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914Y
08/2020
Page 7 of 8

**Borrower**

_Felicia McClain_     11/12/21
FELICIA MCCLAIN        Date

**Lender**

**Union Bank & Trust Company**
*a/an Arkansas Financial Institution*

_[signature]_     11/12/21
       Date

Loan Origination Organization: Union Bank & Trust Company
NMLS ID: 405038

Loan Originator: Brandon Hogg
NMLS ID: 413314

Note-Consumer-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914Y
08/2020
Page 8 of 8

Filed For Record
Drew County, AR
Beverly Burks, Circuit Clerk
By_____

DEC 0 1 2021

AM 1/2/3/4/5/6/7/8/9/10/11/12 PM

**Return To:** Union Bank & Trust Co.
PO Box 270
Monticello, AR 71655

**Prepared By:** Union Bank & Trust Co.
PO Box 270
Monticello, AR 71655

104710

# Mortgage

### With Future Advance Clause

The date of this Mortgage (*"Security Instrument"*) is November 12, 2021.

| **Mortgagor (Grantor)** | **Lender (Grantee)** |
|---|---|
| FELICIA MCCLAIN | Union Bank & Trust Company |
| An unmarried individual | Organized and existing under the laws of the state of Arkansas |
| 171 ROSE HILL CUTOFF RD | 102 W McCloy St |
| MONTICELLO, AR 71655 | Monticello, AR 71655 |

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

Lots 1 and 2 of Block "D" of Laude's Subdivision of the City of Monticello, according to the Plat of said subdivision prepared by Y.R. Royal, surveyor, now recorded at Page 391, of Book 28, of the deed records of Drew County, Arkansas, and Beginning at the Southwest corner of Lot 1 of Block "D" of said Laude's Subdivision, thence West 10 feet, thence North 139.6 feet, thence East 10 feet, thence North 139.6 feet to the Point of Beginning, this property being a portion of the platted alley way which was closed by Resolution of the City Council of Monticello, Arkansas, on June 21, 1979.

The property is located in DREW County at 318 GODBOLD, MONTICELLO, Arkansas 71655.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements,

structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $66,861.84. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

(A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

The promissory note signed by FELICIA MCCLAIN (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). The Note states that Borrower owes Lender Sixty six thousand eight hundred sixty-one and 84/100 Dollars (U.S. $66,861.84) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than November 15, 2022.

(B) All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C) All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

(D) All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**5. Warranty of Title.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914N

07/2021
Page 2 of 8

the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

(A) To make all payments when due and to perform or comply with all covenants.

(B) To promptly deliver to Lender any notices that Mortgagor receives from the holder.

(C) Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. Due on Sale.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. Warranties and Representations.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor or any other owner made under any law or regulation regarding the use, ownership and occupancy of the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914N
07/2021
Page 3 of 8

**12. Assignment of Leases and Rents.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all included in *"Property"*): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as *"Leases"*); and rents, issues and profits (all referred to as *"Rents"*). In the event any item listed as Leases or Rents is determined to be personal property, this assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Security Instrument. As long as this Security Instrument is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. Default.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. Remedies on Default.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914N

07/2021
Page 4 of 8

Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the same interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees (as determined under A.C.A. 16-22-308), court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**17. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," or "hazardous substance," under any Environmental Law.

Mortgagor represents, warrants and agrees that:
    (A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
    (B) Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
    (C) Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
    (D) Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914N
07/2021
Page 5 of 8

pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause". Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**23. Applicable Law; Severability; Interpretation.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914N

07/2021
Page 6 of 8

Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**25. Waivers.** Except to the extent prohibited by law, Mortgagor waives all rights relating to appraisement, sale, redemption and homestead under the laws of the State of Arkansas, especially under 18-49-106. To the extent applicable, Mortgagor relinquishes all rights of curtesy and dower in the Property.

**26.** ☒ **Construction Loan.** This Security Instrument secures a construction loan. Mortgagor agrees that Lender is not trustee for the benefit of the contractor, subcontractor or materialmen and that such contractor, subcontractor or materialmen do not have equitable liens on the loan proceeds and that they do not have third-party beneficiary status to any of the loan proceeds. Lender is obligated to make the construction advances. Except as indicated in the Description of Non-Construction Advances subsection, the construction advances shall be applied by Mortgagor to the payment of interest, fees, expenses and labor and material costs incurred in the construction of the improvements, and/or remodeling and repairs of the existing improvements, located on the Property. Notice is hereby given that to the full extent permitted under *Ark. Stat. Ann.* § 18-44-110, the lien of this Security Instrument will have priority over any statutory liens on account of labor and materials supplied for construction.

**Description of Non-Construction Advances.** _____

**27. Other Terms.** If checked, the following are applicable to this Security Instrument:

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the *Uniform Commercial Code*.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other: _____

☐ **Additional Terms.** _____

## Signatures

By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

Mortgagor

*Felicia McClain*  11/12/21
FELICIA MCCLAIN   Date

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
21.2.0.3847-J20210914N
07/2021
Page 7 of 8

## Acknowledgment

State of Arkansas
County of __Drew__

On this __12__ day of __November__, before me, __Patricia Romero__ a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), appeared the within named FELICIA MCCLAIN, to me personally well known (or satisfactorily proven to be such person), who stated and acknowledged that he/she/they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

In testimony whereof, I have hereunto set my hand and official seal this __12__ day of __November__.

__Patricia Romero__
Notary Public

PATRICIA ROMERO
NOTARY PUBLIC-STATE OF ARKANSAS
DREW COUNTY
My Commission Expires 10-15-2024
Commission # 12401199

__Patricia Romero__
(Print Name)

My commission expires: __10/15/2024__

Loan Origination Organization: Union Bank & Trust Company
NMLS ID: 405038

Loan Originator: Brandon Hogg
NMLS ID: 413314

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

21.2.0.3847-J20210914N

07/2021
Page 8 of 8

State of Arkansas
County of Drew

I hereby certify that this instrument was filed for record and recorded as follows:
DATE __2-1-21__ TIME __9:25__
INSTRUMENT# __0470__
Beverly Burks, Recorder of Drew County
By _____